Mark L. Javitch* (CA SBN 323729)
Javitch Law Office
210 S Ellsworth Ave #486
San Mateo, CA 94401
Telephone: 402-301-5544
Facsimile: 402-396-7131
mark@javitchlawoffice.com
*Attorney for Plaintiff* and the Class
*Pending Pro Hac Vice Admission

UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| BEN FABRIKANT, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ASSURED AUTO GROUP, INC., a Florida corporation, SUNPATH LIMITED, a Delaware corporation, NORTHCOAST WARRANTY SERVICES, INC., a Delaware corporation, WESCO INSURANCE COMPANY, a Delaware corporation, John Doe 1, an unknown business entity<br><br>Defendants. | Case No.: 8:19-cv-00XXX<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1. Plaintiff BEN FABRIKANT ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant ASSURED AUTO GROUP, INC., Defendant SUNPATH LIMITED CORP. Defendant NORTHCOAST WARRANTY SERVICES, INC., Defendant WESCO INSURANCE COMPANY, and Defendant JOHN DOE 1 (together, "Defendants") for selling their

products via illegal robocalls, to get them to stop calling and playing prerecorded voice messages to consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorney.

**NATURE OF THE ACTION**

2. In the course of selling their services, Defendants and/or their agents placed thousands of automated calls employing a prerecorded voice message to consumers' cell phones nationwide.

3. However, Defendants did not obtain consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

6. By placing the calls at issue, Defendants have violated the statutory rights of Plaintiff and the Class.

7. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received

this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

8. Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

9. Plaintiff BEN FABRIKANT is a natural person and is a citizen of the District of Nebraska.

10. Defendant ASSURED AUTO GROUP ("Defendant Assured") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 931 Village Blvd

11. Defendant SUNPATH LIMITED (Defendant "Sunpath") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 50 Braintree Hill Park Ste 310, Braintree, Massachusetts 02184-8704

12. Defendant NORTHCOAST WARRANTY SERVICES, INC. (Defendant "Northcoast") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 800 Superior Avenue East, 21st Floor, Cleveland, Ohio 44114.

13. Defendant WESCO INSURANCE COMPANY (Defendant "Wesco") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 59 Maiden Lane, 43rd Floor, New York, NY 10038.

14. Defendant JOHN DOE 1 ("John Doe 1") is an unknown business entity.

## JURISDICTION AND VENUE

15. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

16. This Court has personal jurisdiction over Defendants because they placed phone calls into this District and in the State of Nebraska and because the events giving rise to this lawsuit occurred in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants regularly conduct business in the State of Nebraska and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## COMMON FACTUAL ALLEGATIONS

18. Defendants are companies that closely cooperate to market, sell, finance and provide vehicle service contracts to consumers.

19. Defendant Assured is the sales agent for the joint product with the other Defendants.

20. Defendant Sunpath is the administrator of the vehicle service contract.

21. Defendant Northcoast is the party responsible for the benefits under the contract.

22. Defendant Wesco is a secondary insurer for the contract.

23. Upon information and belief, these vehicle service contracts are not the type of traditional auto insurance that can be used to show consumers' compliance with state DMV regulations.

24. To increase the reach of their efforts in writing these contracts, Defendants and/or their authorized sales agents repeatedly called and sent prerecorded voice messages to thousands or possibly tens of thousands of cell phones at a time.

25. When the Class members answered their phones or listened to their messages expecting to hear from a real person, Defendants pulled a bait and switch by playing a prerecorded voice message.

26. Unfortunately, Defendants failed to obtain consent from Plaintiff and the Class before bombarding their cell phones with these illegal voice recordings.

### FACTS SPECIFIC TO PLAINTIFF BEN FABRIKANT

27. On August 23, 2019 at 9:43 a.m., Plaintiff received a call on Plaintiff's cell phone number ending in 5348.

28. The caller ID on the incoming call displayed as (317) 881-4964.



29. Plaintiff answered the call and it was a prerecorded voice advertising auto warranties and that Plaintiff should "press one" to speak to an agent.

30. Plaintiff pressed one and was connected with Defendant John Doe 1.

31. Plaintiff was eventually transferred to Assured, who asked plaintiff for relevant details such as the make, model, and mileage of Plaintiff's car.

32. Plaintiff purchased and received a vehicle service contract from Defendants.

33. Plaintiff never consented to receive calls from Defendants. Plaintiff had no relationship with Defendants prior to this illegal phone call.

34. Defendants' call violated Plaintiff's statutory rights under the TCPA.

**BASIS FOR LIABILITY: DIRECT LIABILITY**

35. By structuring their businesses with a hidden party performing robocalling to promote their services, Assured, Sunpath, Northcoast, and Wesco have effectively outsourced their illegal robocalling to a third-party.

36. But this is not a basis for avoiding liability.

37. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

**AGENCY ALLEGATIONS**

38. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

39. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify Defendant John Doe 1 or the exact party who called her phone.

40. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

41. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

42. Even if Defendants Assured, Sunpath, Northcoast, and Wesco allege that they did not personally make the TCPA-violating calls, Defendants are still liable for Defendant John Doe 1's actions if it took steps to cause the calls to be made, or if the calls were made pursuant to Defendants' actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

**BASIS FOR LIABILITY: ACTUAL AUTHORITY**

43. Assured, Sunpath, Northcoast, and Wesco authorized John Doe 1 to generate prospective customers. Defendants' integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that John Doe 1 was the telemarketing department of Defendants Assured, Sunpath, Northcoast, and Wesco.

44. But apparently, John Doe 1 was an outside firm that Defendants hired, which permitted Assured, Sunpath, Northcoast, and Wesco to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

45. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

46. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

47. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

48. Assured, Sunpath, Northcoast, and Wesco manifested to John Doe 1 that they wanted John Doe 1 to recruit particular types of customers for them on a large scale.

49. John Doe 1 accepted the undertaking.

50. There was an understanding that Assured, Sunpath, Northcoast, and Wesco controlled John Doe 1 by specifying the criteria of potential customers that would be most profitable for Defendants to sell to after they had been robocalled.

51. Assured also specified criteria to John Doe 1 for to receive live incoming call transfers of consumers generated pursuant to robocalls.

52. Assured coordinated its technological capabilities with John Doe 1 for its telemarketing agents to receive live transfers of incoming calls generated pursuant to robocalls.

53. Sunpath, Northcoast, and Wesco integrated their systems with Assured so they could access the records of the people with whom they executed contracts.

54. Upon information and belief Sunpath, Northcoast and Wesco had access to the sales and customers generated by the illegal robocalling.

## BASIS FOR LIABILITY: APPARENT AUTHORITY

55. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

56. Assured, Sunpath, Northcoast, and Wesco authorized John Doe 1 to generate prospective customers for them.

57. The integration of their sales efforts with robocalling Defendants used was so seamless that it appeared to Plaintiff that John Doe 1 was one and the same company with all the Defendants.

58. Plaintiff reasonably believed and relied on the fact that John Doe 1 had received permission and instructions to conduct activity on their behalf by Assured, Sunpath, Northcoast, and Wesco.

## BASIS FOR LIABILITY: RATIFICATION

59. Assured, Sunpath, Northcoast, and Wesco knowingly and actively accepted business that originated through the illegal robocalls placed by John Doe 1.

60. By accepting these contacts, Assured, Sunpath, Northcoast, and Wesco "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe 1, as described in the Restatement (Third) of Agency.

61. Assured, Sunpath, Northcoast, and Wesco ratified John Doe 1's TCPA violations by knowingly accepting the benefit of large volume of sales, despite that these sales were generated illegally.

62. Defendants took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

63. Defendants ratified John Doe 1's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

64. Assured, Sunpath, Northcoast, and Wesco ratification caused John Doe 1 to have their actual authority. Restatement § 4.01 cmt. b.

## BASIS FOR LIABILITY: JOINT ENTERPRISE

65. Assured, Sunpath, Northcoast, and Wesco each had a tacit agreement or approved of after the fact with John Doe 1 for the sale of their products pursuant to John Doe 1's illegal robocalls.

66. Defendants were all part of a common enterprise and had a community of interest in quickly selling their joint vehicle service contracts pursuant to aggressive telemarketing.

67. Defendants had an equal right to control the conduct thereof by specifying who should be called, the questions that should be asked to people that were robocalled, and the procedure for transferring live customer calls.

68. Defendants had a duty to exercise due care when marketing their products.

69. John Doe 1's violation of the TCPA is negligence per se.

70. Because of John Doe 1's negligence, Plaintiff suffered damage.

71. Defendants are all jointly and severally liable for the resulting damage caused by John Doe 1.

**BASIS FOR LIABILITY: ACTING IN CONCERT**

72. Assured, Sunpath, Northcoast, and Wesco acted in concert with John Doe 1 when they arranged to solicit the people that were identified pursuant to John Doe 1's illegal robocalls.

73. Defendants were part of a common design to robocall consumers and then vehicle service contracts.

74. Defendants had a tacit understanding that John Doe 1 was robocalling in violation of the TCPA.

75. Assured, Sunpath, Northcoast, and Wesco knew that John Doe 1's conduct was a breach of duty to Plaintiff.

76. Assured, Sunpath, Northcoast, and Wesco gave John Doe 1 substantial assistance in accomplishing the tortious result, including compensating John Doe 1 for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

77. Assured, Sunpath, Northcoast, and Wesco furthered the tortious conduct by their cooperation and request, and lending aid to John Doe 1, and adopting John Doe 1's acts for their own benefit.

78. Assured, Sunpath, Northcoast, and Wesco own conduct constitutes a breach of duty to Plaintiff.

79. Plaintiff's injury is indivisible.

80. All Defendants acted tortiously and the harm resulted from the robocalling of John Doe 1.

81. Assured, Sunpath, Northcoast, and Wesco are joint and severally liable for the resulting damage caused by John Doe 1.

## CLASS ALLEGATIONS

82. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3) on behalf of itself and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) received at least one telephone call from John Doe 1; (3) on his or her cellular or residential telephone; (4) that played an artificial or prerecorded voice message; (5) for the purpose of performing or selling Defendants' joint product; (6) where Defendants did not have prior express written consent to place such call at the time it was made.

83. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

84. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

85. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

86. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

87. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

88. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   i.   Whether Defendants' conduct violated the TCPA;

   ii.  Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

   iii. Whether Defendants called and played its voice recordings to thousands of cell phones;

iv.     Whether Defendants obtained prior written consent prior to contacting any members of the Class;

v.      Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

89.     **Superiority**: Plaintiff's case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of plaintiff's controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in Plaintiff's Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

90.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

91.     Defendants and/or its agent placed telephone calls to Plaintiff's and the Class members' cellular telephones without having their prior express written consent to do so.

92.     Defendants' calls were made for a commercial purpose.

93. Defendants played an artificial or prerecorded voice message to the cellular and residential phones of Plaintiff and the Class members as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

94. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

95. Defendants and/or its agent made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

96. If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff BEN FABRIKANT, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff BEN FABRIKANT as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D. An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Class;

E.  An award of actual damages and/or statutory fines and penalties;

F.  An award of reasonable attorneys' fees and costs; and

G.  Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: September 1, 2019

                                                    Respectfully submitted,

BEN FABRIKANT, individually and on behalf of all others similarly situated,

By:  /s/ Mark L. Javitch                .

Plaintiff's Attorney

Mark L. Javitch (California SBN 323729)*
Mark L. Javitch, Attorney at Law
210 S. Ellsworth Ave #486
San Mateo CA 94401
Tel: 402-301-5544
Fax: 402-396-7131

*Attorney for Plaintiff and the Putative Class*
*Pending Pro Hac Vice Admission